**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **SAM R. AERTKER,** | * | |
| | * | **No. 1:22-CV-00323** |
| **Plaintiff** | * | |
| | * | **JUDGE DAVID C. JOSEPH** |
| **v.** | * | |
| | * | **MAGISTRATE JUDGE JOSEPH H.L.** |
| **DRESSER, L.L.C., ET AL.** | * | **PEREZ-MONTES** |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## SECOND AMENDED COMPLAINT

Pursuant to this Court's directive in its Memorandum Ruling entered on May 4, 2022 (R. Doc. 71), to "amend [Plaintiff's] complaint within fourteen (14) days of this ruling to properly name 'General Electric Company' as a defendant in this matter pursuant to Federal Rule of Civil Procedure 15(a)(2), and to otherwise re-state his remaining claims in accordance with this ruling," Sam R. Aertker files this Second Amended Complaint. As the Original Petition and First Amended Complaint were preluded, so here: Mr. Aertker is the owner of property adjacent to what is known as the GE-Dresser facility in Pineville, Louisiana, and brings this suit for damages and for injunctive and declaratory relief against past and present owners and operators of the GE-Dresser facility for their conduct in causing catastrophic contamination of the soil, surface water, and groundwater on Mr. Aertker's property; and against the Louisiana Department of Environmental Quality ("LDEQ") for its failure to provide notice to Mr. Aertker as the neighboring property owner when LDEQ knew of events contributing to that contamination and for its failure to perform other non-ministerial tasks in response to the environmental catastrophe and imminent harm to health and human environment caused by the owners and operators of the facility. Mr. Aertker

brings this suit under Louisiana state law. In support of these claims, Mr. Aertker alleges as follows:

## PARTIES

### *Plaintiff*

1. Made Plaintiff to this matter is Sam R. Aertker; Mr. Aertker is a citizen of Louisiana and owns a tract of property near Pineville, Louisiana, that consists of 9.134 acres located in the SW ¼ of the NE ¼ of Section 16, T5N, R1W, Rapides Parish, Louisiana, on the west side of Schoolhouse Branch that lies west of U.S. Highway 167 and north of U.S. Highway 71 adjacent to the Dresser Valve Plant tract ("the Aertker Property").[1] The Aertker Property is bordered to the east by the Louisiana DOTD right-of-way for Highway 167, to the south by the DOTD right-of-way for Highway 71, and to the north and west by the GE-Dresser facility.

### *Defendants*

2. The following entities are made Defendants to this matter:

    a. Defendant Dresser, L.L.C., is the current owner and/or operator of the GE-Dresser facility near Pineville, Louisiana, with the street address 8011 Shreveport Highway, Pineville, LA 71360 ("the GE-Dresser facility"). Dresser, L.L.C., is a limited liability company organized under the laws of Delaware with its principal place of business in Texas. At the time of filing of the Original Petition, Dresser, L.L.C.'s sole member was Baker Hughes, A GE Company, L.L.C.; according to the Corporate Disclosure Statement filed in this matter at R. Doc. 4, Baker Hughes, A

---

[1] The Aertker Property is shown on the April 26, 1982 Certificate of Survey attached to the First Amended Complaint as Exhibit A. R. Doc. 16-1. The property description on the survey erroneously states that the Aertker Property is in Section "17," rather than Section 16.

GE Company, is now known as Baker Hughes Holdings LLC. Dresser, L.L.C. is made Defendant in its own capacity and as successor-in-interest to Dresser, Inc. and Dresser Industries.

b.  Dresser RE, L.L.C., is the current owner of the property on which sits the GE Dresser facility in Rapides Parish, Louisiana. Dresser RE, L.L.C., is a limited liability company organized under the laws of Delaware with its principal place of business in Texas. Dresser RE, L.L.C.'s sole member is Dresser, L.L.C. Dresser RE, L.L.C. is made Defendant in its own capacity and as successor-in-interest to the prior owners of the GE-Dresser facility property. Except where necessary to distinguish Dresser, L.L.C. and Dresser RE, L.L.C., they (along with their predecessor entities) will be referred to collectively herein as "Dresser."

c.  Baker Hughes, A GE Company, L.L.C. is organized under the laws of Delaware and has its principal place of business in Texas. On information and belief, at the time of the filing of the Original Petition, Baker Hughes, A GE Company, L.L.C.'s two members were Baker Hughes, Inc., and the Oil and Gas Division of the General Electric Company. According to the Corporate Disclosure Statement filed in this matter at R. Doc. 4, Baker Hughes, A GE Company, is now known as Baker Hughes Holdings LLC, a Delaware limited liability company, and Baker Hughes Holdings LLC's members are GE Oil & Gas US Holdings I, Inc. (in turn, wholly owned by General Electric Company), Baker Hughes Company (a publicly held corporation), and EHHC NewCo LLC (wholly owned by Baker Hughes Company).

d.  Baker Hughes, Inc., is a Delaware-incorporated company with its principal place of business in Texas. According to the Corporate Disclosure Statement filed in this

matter at R. Doc. 4, Baker Hughes, Inc., is now known as Baker Hughes Holdings LLC, a Delaware limited liability company, and Baker Hughes Holdings LLC's members are GE Oil & Gas US Holdings I, Inc. (in turn, wholly owned by General Electric Company), Baker Hughes Company (a publicly held corporation), and EHHC NewCo LLC (wholly owned by Baker Hughes Company). Except where necessary to distinguish between them, Baker Hughes, A GE Company, L.L.C. and Baker Hughes, Inc., will be referred to collectively herein as "Baker Hughes." The Baker Hughes entities are made Defendants in their capacities as current holders of interest in Dresser and in the GE-Dresser facility, and as past owners and operators of the GE-Dresser facility during time-periods relevant to the allegations in this Petition.

e.  The General Electric Company ("GE") is a New York-incorporated company with its principal place of business in Boston. GE is made a Defendant in its capacity as a past owner and operator of the GE-Dresser facility during time periods relevant to the allegations in this Petition, which ownership and operation GE engaged in through its division known as the Oil and Gas division of the General Electric Company ("GE Oil & Gas").

f.  Dresser, Baker Hughes, and GE will be referred to herein collectively as "Defendants."

g.  The Louisiana Department of Environment Quality ("LDEQ") is a state agency of the State of Louisiana responsible for monitoring and regulating activity within the state affecting the environment. LDEQ is also made a defendant herein, though allegations regarding LDEQ will refer specifically to "LDEQ," and LDEQ should

not be deemed to be included in allegations that refer to actions collectively of "Defendants."

## VENUE

3.  Venue for the filing of the Original Petition was proper in East Baton Rouge Parish because LDEQ is a Defendant. Accordingly, as removed this action was properly in the venue of the Middle District of Louisiana because that district is the federal judicial District that encompasses East Baton Rouge Parish. By order dated January 31, 2022, this action was subsequently transferred to the Alexandria Division of the Western District of Louisiana. R. Doc. 44.

## JURISDICTION

4.  The Original Petition was properly filed in the 19th Judicial District for the Parish of East Baton Rouge, State of Louisiana. Defendants removed the Original Petition to the United States District Court for the Middle District of Louisiana based, in part, on Mr. Aertker's assertion of a claim under the federal Resource Conservation and Recovery Act ("RCRA"). Accordingly, jurisdiction was proper in this Court pursuant to 28 U.S.C. § 1441(a) over the RCRA claim as a claim over which this Court would have had original jurisdiction under 28 U.S.C. § 1331 and over Mr. Aertker's remaining claims as claims over which this Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). This Court, however, has dismissed Mr. Aertker's RCRA claim (R. Doc. 71). The parties have briefed to this Court the questions of whether diversity jurisdiction exists—Mr. Aertker takes the position that it does not, due to the presence in this action of defendant LDEQ—and whether this Court may otherwise exercise its discretion to continue to exercise supplemental

jurisdiction over Mr. Aertker's state-law claims; as of the date of filing of this Second Amended Complaint, those issues remain unresolved.

## FACTS

### *The Aertker Property*

5.  Mr. Aertker owns the Aertker Property, at issue here, having inherited it through the succession of his mother, by Judgment of Possession dated August 28, 1978. The Aertker Property has been in Mr. Aertker's family since the 1920s, having been acquired by Mr. Aertker's grandparents in 1927. Due in part to expropriation of the highway rights-of-way on the east and south of the property, the 9.134-acre plot at issue in this suit is all that is left of the acreage Mr. Aertker inherited.

6.  The Aertker Property is wooded, covered by mixed hardwood and pine. A surface stream runs the length of the property, roughly from north to south.

7.  Since the expropriation of the DOTD rights-of-way to the east and south of the Aertker Property, Mr. Aertker has not had free access to the property.

8.  The surface topography of the Aertker Property slopes from the north and west—the property where the GE-Dresser facility is located—down across Mr. Aertker's woods and stream to the south and east.

9.  The property surface is composed of a Pleistocene interglacial terrace (the Bentley Terrace), which in places is less than 70 feet thick and is directly underlain by the Montgomery Terrace.

10. The subsurface topography generally follows the surface contours, with the groundwater formation flowing from the north and the west to the subsurface beneath Mr. Aertker's

property. The Aertker Property is located in the Red River Basin, overlying the North Louisiana Terrace Aquifer.

11. The North Louisiana Terrace Aquifer is a good-quality aquifer used for drinking water, and this quality and usability are true for those portions underlying the Aertker Property.

12. The clay layer underlying the shallower groundwater formations beneath the GE-Dresser facility and the Aertker Property is "semi-confining," at best, with pathways to deeper groundwater formations within the aquifer.

### *Historical operations at the GE-Dresser facility*

13. Dresser has a long history in the industrial machining field. The Dresser Company was formed in 1880, and went public in 1926. By 1950, operating as Dresser Industries, the company had moved its headquarters to Dallas, Texas.

14. The site where the GE-Dresser facility is located was first developed by Manning, Maxwell, and Moore in 1961, and fully acquired by Dresser Industries in 1964. The site manufactured and repaired pressure relief valves for the oil and gas industry at the site from 1961 through at least 2016.

15. Dresser concedes that its facility at the site used chlorinated solvents, including trichloroethylene ("TCE"), a known human carcinogen, in its manufacturing operations.

16. Defendants kept a storage tank for TCE at the southeast corner of its building at the GE-Dresser facility. The southeast corner of the building is the closest portion of the building to the northwestern tip of the Aertker property.

17. The location of Defendants' TCE storage tank is a source of high levels of TCE contamination that continues to migrate from the GE-Dresser facility, indicating that

Defendants' TCE storage tank and TCE-related operations involved constant leaks, seepages, and spills throughout the time of their use of the facility and the storage tank.

18. Defendants' operations at the GE-Dresser facility included the use of floor drains throughout the building that drained process fluids, including TCE, which fluids escaped to the soil beneath the building.

19. Defendants used two "ponds" to the south of the manufacturing building—and immediately to the west of the Aertker Property—for discharge of wastewater from their manufacturing operations at the GE-Dresser facility.

20. These ponds are unlined earthen pits.

21. In 2002, a contractor retained by Halliburton found that the water column in one of the ponds was contaminated with aluminum, arsenic, barium, copper, iron, manganese, nickel, silver, and zinc; and that the sediment at the bottom of the unlined earthen pit contained arsenic, silver, and zinc.

22. Dresser handled and generated material that included radioactive constituents.

23. The Dresser site had a history of regulatory compliance orders, warning letters, and contamination reports. For example:

   a. A June 17, 1997 Compliance Order WE-C-97-0154, when a September 3, 1996 inspection disclosed repeated discharges of untreated wastewater to waters of the State and a failure to notify LDEQ within five days of discovering the discharges.

   b. An April 5, 2006 warning letter from LDEQ based on a March 15, 2006 inspection report noting various issues with securing heavy metal dusts and debris and used solvents.

     c.  A June 9, 2010 warning letter based on an April 14, 2010 inspection that found repeated violations specifically similar to those found in the 2006 inspection. Noted specifically that Dresser was mislabeling hazardous waste drums for used solvents containing toluene, methyl ethyl ketone, xylene, and ethyl benzene.

24. In 1998, Dresser merged with Halliburton, and 2001 separated out as Dresser, Inc.

25. In 2011, Dresser was acquired by GE through GE Oil & Gas. In 2017, GE Oil & Gas merged with Baker-Hughes; and in October 2019 Dresser, L.L.C. became an independent subsidiary of Baker-Hughes.

26. Documents maintained by LDEQ in its electronic document management system show that GE was aware of contamination occurring from the GE-Dresser facility at least as early as 2012, and that GE was operating the GE-Dresser facility and controlling communications with regulatory authorities regarding contamination at the site.

27. On information and belief, Baker-Hughes is controlling the operations of Dresser with regard to monitoring and response to the contamination at the GE-Dresser facility, as all of Dresser's operations are controlled out of Baker-Hughes' Texas offices.

28. Dresser RE, L.L.C. is the current owner of the Pineville site where the GE-Dresser facility is located. Dresser, LLC is engaged with LDEQ in an ongoing monitoring and remediation project at the site and at various offsite locations, though Dresser and the other Defendants have ignored the Aertker Property that is immediately adjacent to the site.

### *The contamination catastrophe centered on the GE-Dresser facility*

29. In a notice dated January 8, 2020, LDEQ addressed "Resident/Property Owners" in the vicinity of the site to disclose to them soil and groundwater TCE contamination migrating off of the GE-Dresser site.

30. LDEQ did not provide this notice to Mr. Aertker, the owner of the immediately adjacent property.

31. Mr. Aertker learned of the contamination at the GE-Dresser site through media reports that began on or around January 30, 2020 regarding the LDEQ disclosure of the contamination from the GE-Dresser site. Those initial reports identified the contamination as having come from the TCE storage tank that was used to degrease metal components in the facility.

32. As it turns out, LDEQ had known of contamination of known human carcinogens in the soil and groundwater at the GE-Dresser facility, specifically including parts of the facility adjacent to the Aertker Property, beginning in 2012.

33. In a September 2014 report, the contamination is attributed to a pipe break in 2012. A June 29, 2015 report attributes it to observation of an oily sheen on ponded water during a repair of a fire suppression system in November 2011. In either case, what is clear is that Dresser and GE experienced a spill event in late 2011 that they did not report to LDEQ until 2012.

34. Dresser and Baker-Hughes no longer attempt to pin the contamination from the GE-Dresser facility on a discrete 2011 or 2012 event, but admit on a Dresser website providing the public with information about the contamination at its facility that "[i]t has now been determined that chlorinated solvents are present in soils at the facility and have been found in some locations in the shallow groundwater at 14 to 55 feet below the ground surface *in connection with historical operations*[.]" *See* dresserpineville.com.

35. Though the contamination was reported to LDEQ at least by 2012, LDEQ did not disclose any contamination to the public until January 2020. It did not include the immediately adjacent neighbor, Mr. Aertker, in that notification.

36. In the meantime, LDEQ began conducting extensive monitoring and reporting of the contamination, including reports in at least September 2014 and June 2015.

37. In June 2013, monitoring wells confirmed the presence of volatile organic compounds ("VOCs") in the groundwater underlying the GE-Dresser facility.

38. By May 2014, groundwater samples on the site's eastern boundary, which is adjacent to the Aertker Property, had returned results of up to 87 mg/L of TCE, **more than 17,400 times** the screening standard of .005 mg/L.

39. A December 21, 2018 report confirmed that TCE was being released from the southeast corner of the former manufacturing building, even though TCE had not been used in operations at the facility for more than a decade.

40. The December 2018 report also confirmed that there had been multiple decades of release of TCE to the subsurface.

41. As reported by February 2020, the contaminants involved both TCE and tetrachloroethylene (PCE). TCE is a known human carcinogen, linked to kidney cancer, liver cancer, and malignant lymphoma. PCE is a likely human carcinogen, linked to liver cancer, kidney cancer, malignant lymphoma, bladder cancer, multiple myeloma, and non-Hodgkin's lymphoma.

42. The Dresser website for the contamination and remediation efforts concedes that affected groundwater has migrated offsite "to the north, south, and east." Specifically identified areas of offsite migration include portions of the Aurora Park residential area and Timber Trails/Fairway East area, both in Rapides Parish, and the Gray Stone residential area in Grant Parish. Dresser fails to address the immediately adjacent landowner, Mr. Aertker.

43. An LDEQ fact sheet from late March 2020 notes that there were seven soil vapor extraction wells on the Dresser site at that point, and that as of March 20, 2020, there were 80 monitoring wells, 23 hydropunch sampling locations, 111 vapor monitoring points, and monitoring in 43 homes.

44. Neither Dresser, Baker-Hughes, nor LDEQ have sought to monitor the contamination on the Aertker Property, immediately adjacent to the GE-Dresser facility.

45. A March 23, 2020 report noted the following contaminants in the groundwater at the site exceeded RECAP screening standards: TCE; Cis-1,2- Dichloroethene; 1, 1 Dichloroethene; 1,1, 2-Trichloroethane; PCE; Acetone; and vinyl chloride. The TCE concentrations were the highest at the southeast corner of the former manufacturing building, which is the closest part of the building to the Aertker Property.

46. Soil vapor exceedances were also recorded onsite for TCE, vinyl chloride, and PCE. Vinyl chloride is a daughter product of TCE, and is a known human carcinogen in its own right.

47. Defendants have often ignored the presence of a Mr. Aertker, their neighboring owner, violating the boundaries of their property and trampling on the property rights or Mr. Aertker.

48. For example, Defendants installed and paved a deliberate and intentional drainage course to drain surface fluids from the direction of their former manufacturing building across their parking lot and directly onto the Aertker Property, ending with a concrete gutter draining right at the property line.

49. The soil and surface waters running from that concrete gutter are contaminated with high levels of VOCs and other contaminants.

50. On information and belief, this example of the directed drainage onto the Aertker Property is not the only breach of the boundary between the properties by Defendants in their quest to direct contaminants away from their own property.

51. In short, decades of testing by Defendants' own contractors and kept on file at LDEQ shows contamination of the GE-Dresser facility with toxic and carcinogenic heavy metals, VOCs, and other contaminants, potentially including radioactive material, and including both known and likely human carcinogens—contaminating the soil, surface water, and groundwater—a contamination catastrophe. That catastrophe has been extended onto the Aertker Property through years of intentional and grossly negligent acts by Defendants. The constituents of concern include, but are not limited to, solid and hazardous waste, radioactive materials and radionucleides, volatile organics, semi-volatile organics, and metals, including known and likely human carcinogens.

52. Specific sources of contaminants already identified in records on file in LDEQ's EDMS include cutting oils; spent halogenated solvents; quench bath sludge; spent pickle liquor; spent lubricating, hydraulic, and cutting fluids; cleaning solvents; and paint varnish; the full EPA SW846 VOC list and semi-volatile list; PCBs; aluminum; antimony; barium; beryllium; cadmium; chromium; cobalt; copper; iron; lead; manganese; nickel; selenium; silver; mercury; arsenic; zinc and zinc phosphate; thallium; and vanadium.

53. And, while LDEQ has known for at least eight years of the contamination and the likelihood that it was migrating to the Aertker Property, LDEQ has never notified Mr. Aertker and has not included the Aertker Property in any monitoring or remediation actions it is overseeing related to the GE-Dresser facility.

## CAUSES OF ACTION

### *Count 1: Liability of LDEQ*

54. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

55. The Louisiana Administrative Code mandates notice by LDEQ of a release of contaminants in certain situations. "The department shall issue notice of a release that poses a significant risk of adverse health effects to persons whom the department reasonably determines are likely to be adversely affected by the release." La. Admin. Code 33:I.109.

56. This notification requirement is not discretionary.

57. LDEQ had notice at least by 2012 of a TCE release from the GE-Dresser facility, and did not make any notice to the public until January 2020 (well past the thirty days within which such notice is to be made)—and has never made any notice to Mr. Aertker, the next-door property owner.

58. LDEQ knew that the contamination from the GE-Dresser facility, specifically including contamination from at least one known human carcinogen, was migrating toward and likely had already migrated to, the Aertker Property, and never notified Mr. Aertker.

59. LDEQ is overseeing monitoring and remediation efforts by Dresser regarding contamination on and migrating from its site, including monitoring and remediation efforts in residential subdivisions to the east and south of the Aertker Property, but has not required any monitoring or remediation by Dresser of the property that lies in between the GE-Dresser facility and those residential subdivisions—specifically, the Aertker Property.

60. LDEQ's failure has led to much more severe contamination of Mr. Aertker's property than otherwise would have occurred, as well as to the increased risk of adverse health effects from any use of the Aertker Property.

61. LDEQ has breached its non-discretionary duty to notify Mr. Aertker of the contamination from the GE-Dresser facility.

62. LDEQ has breached its non-discretionary duty to require Defendants to properly dispose of contaminants and to remediate those contaminants they failed to properly dispose of.

63. Due to LDEQ's breaches of these non-discretionary duties, Mr. Aertker has suffered damages in the increased cost to remediate to the soil, surface water, and groundwater on and underlying the Aertker Property.

### *Count 2: Negligence[2]*

64. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

65. Defendants, in engaging in their operations at the GE-Dresser facility as detailed above, have a duty to use reasonable care to avoid damage to others. This duty has existed throughout the time each of the Defendants owned and/or operated the facility.

66. Defendants also have and have had a duty to comply with various federal and state regulations and laws governing the handling, storage, disposal, and transportation of hazardous substances.

67. Defendants also have and have had a duty to abide by the standard of care applicable to owners and operators of industrial machining manufacturing and repair shops.

---

[2] Mr. Aertker has amended his negligence cause of action to delete claims for negligence "insofar as it claims Dresser failed to contain and remediate the alleged contamination." R. Doc. 71, at 6.

68. Included within these duties, Defendants have and have had duties to (1) not store hazardous materials and wastes in unlined earthen pits; (2) not allow hazardous substances and wastes to drain through floor drains to be emitted and discharged from the facility untreated; (3) not allow hazardous substances and wastes to be directed across their property and onto neighboring properties; (4) not store hazardous substances and wastes in leaking storage tanks; (5) not handle, store, or transport hazardous substances and wastes in such a manner as to lead to discharge of such substances and wastes from their property in unpermitted manners or amounts.

69. As specified in the allegations above, each Defendant breached these duties while it was the owner or operator of the GE-Dresser facility.

70. Defendants have each breached these duties.

71. In particular as to the Aertker Property, Defendants have (1) deliberately directed contaminated run-off onto the Aertker Property, without permission or authorization to do so; and (2) by information and belief, intentionally or with gross negligence otherwise directed the discharge or placement of contaminating material onto the Aertker Property.

72. As a result of each Defendant's breach of these various duties, the soil, surface water, and groundwater on and underlying the Aertker Property is catastrophically and dangerously contaminated. Defendants are therefore liable for all damages and remedies detailed further below.

### *Count 3: Nuisance*[3]

73. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

74. In addition to the basic Civil Code article 2315-based duties discussed above, Defendants each have the specific duty to Mr. Aertker owed to a neighbor under Civil Code articles 667, *et seq.*

75. Defendants' activities on the property underlying the GE-Dresser facility have severely deprived Mr. Aertker of his enjoyment of his own property, as his ability to enjoy his property as he sees fit is wholly undermined by the extraordinary contamination of his property by Defendants' actions on their property.

76. The two properties are directly adjacent, neighboring properties.

77. As detailed in the above allegations, Defendants knew or should have known that their activities would cause the contamination of the Aertker Property. This includes, but is not limited to, their use of unlined earthen pits, their use of floor drains in their manufacturing facility, their use of a the leaky TCE storage tank and failure to remediate the area where the storage tank was located, and the intentional direction of surface run-off onto the Aertker Property.

78. Defendants have breached their vicinage duties to Mr. Aertker under Civil Code article 667.

---

[3] Mr. Aertker has amended his nuisance cause of action insofar as it had previously raised a strict-liability nuisance claim under pre-1996 La. C.C. art. 667. R. Doc. 71, at 7.

79. The breach of these duties has caused damage to Mr. Aertker through the contamination of his property. Defendants are therefore liable for all damages and remedies detailed further below.

### *Count 4: Breach of Natural Servitude of Drain*

80. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

81. Pursuant to Civil Code articles 655 and 656, "[t]he owner of a dominant estate situated above may not do anything to render the servitude [the natural servitude of drain] more burdensome" on the owner of the servient estate situated below.

82. The Defendants, at the time each was the owner of the property on which the GE-Dresser facility is located, was the owner of the dominant estate with regard to the natural servitude of drain, and Mr. Aertker was the owner of the servient estate with regard to that natural servitude.

83. By directing contaminated runoff into the drainage from their property, Defendants rendered the servitude of drain more burdensome to Mr. Aertker, as they each directed contaminants, including likely and known human carcinogens, onto his property through that drainage.

84. As a result of Defendants' actions rendering more burdensome the natural servitude of drain, Mr. Aertker was damaged by the contamination of his property. Defendants are therefore liable for all damages and remedies detailed further below.

## *Count 5: Trespass*[4]

85. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

86. Defendants have never had authorization to place their hazardous substances and wastes, or any contaminants, onto the Aertker Property.

87. Nevertheless, as alleged specifically above, they continuously and intentionally directed their contaminants onto the Aertker Property throughout the years of their operations and right up through the present time.

88. This physical invasion of the Aertker Property by the contaminants from Defendants' property is a trespass.

89. Furthermore, certain actions by Defendants have been taken with the knowing intent to place contaminants onto the Aertker Property, resulting in a bad faith trespass.

90. As a result of Defendants' intentional actions resulting in a trespass on the Aertker Property, Mr. Aertker was damaged by the contamination of his property. Defendants are therefore liable for all damages and remedies detailed further below

## *Count 6: Breach of Louisiana Mineral Code Article 10*

91. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

92. Under La. R.S. § 31:10, an owner of rights in a common source or supply—such as the common groundwater aquifer beneath the Dresser property and the Aertker property—may

---

[4] Mr. Aertker has amended his trespass cause of action to delete any allegation that he is seeking trespass remedies for unintentional acts by the Defendants or that his trespass claim depends on the characterization of the trespass as a continuing trespass. R. Doc. 71, at 7-9. Mr. Aertker has also amended this cause of action to delete the request for civil fruits as a remedy for the trespass. R. Doc. 71, at 10.

not "make works, operate, or otherwise use his rights so as to deprive another intentionally or negligently of the liberty of enjoying his rights or that may cause damage to him."

93. Defendants' actions in engaging in operations that have polluted both the shallow and deep groundwater under the Aertker Property is a violation of this prohibition under Mineral Code Article 10.

94. As a result of Defendants' breach of Mineral Code Article 10, they are liable to Mr. Aertker to remediate the groundwater underlying his property. Defendants are therefore liable for the groundwater-related damages and remedies detailed further below.

### *Count 7: Premises Liability Under Civil Code Articles 2317 and 2322*

95. Mr. Aertker incorporates all of the above allegations as if incorporated specifically into this Count.

96. Under Civil Code articles 2317 and 2322, Defendants have a duty to prevent damage caused by things in their *garde* and custody and by their buildings when caused by those things' or buildings' ruin, vice, or defect.

97. Defendants had *garde* and custody over, among other things, the TCE storage tank in the former manufacturing building; the unlined earthen pits at the GE-Dresser site; and drums and other containers of solvents, including TCE, and other hazardous materials and wastes.

98. Defendant maintained this *garde* and custody at least from 1961 through 2016, and Dresser continues to have *garde* and custody over the pits to this day.

99. Additionally, Defendants have owned—and in the case of Dresser, continue to own—the manufacturing building at the GE-Dresser facility.

100.    The pits may be deemed either things over which Defendants have *garde* or buildings.

101.    The pits are subject to the inherent vice of unlined earthen pits that such pits do not contain the material deposited in them, but will seep and leak and/or overflow. Defendants knew or should have known of this vice.

102.    Additionally, the particular pits here suffered from the defect that they in fact failed to contain the hazardous materials placed in them, as evidenced by the presence of heavy metals in the sediments beneath the pits.

103.    The TCE storage tank suffered from the ruin and defect that it was unable to contain the TCE stored within it, as it leaked and seeped TCE, evidenced by the high concentrations of TCE in the soil and groundwater that has its epicenter at the southeast corner of the manufacturing building, where the tank was or is located.

104.    The TCE storage tank additionally suffered from the inherent vice that TCE could not be put within it or taken out of it without occasioning spills of TCE.

105.    The drums and other containers in which Defendants stored, disposed of, or transferred TCE and other solvents and hazardous materials and wastes suffered from inherent vices or from defects in that they would fail to contain the material stored or disposed of therein.

106.    The manufacturing building itself suffered from the vice that it incorporated floor drains through which hazardous materials and wastes would escape into the soil and subsurface beneath the building.

107.    Additionally, insofar as the manufacturing building includes the paved parking area surrounding it, it suffered from the inherent vice of deliberately being graded to drain hazardous substances and wastes directly toward and onto the Aertker Property.

108.     As a result of the above-alleged vices, defects, and ruin in the building and in the things over which Defendants had and continue to have *garde* and custody, the Aertker Property has become contaminated. Defendants are therefore liable for all damages and remedies detailed further below.

**COUNT 8: Louisiana Environmental Quality Act ("LEQA") Liability**

109.     Mr. Aertker incorporates all of the above allegations and causes of action as if incorporated specifically into this section of this Petition.

110.     Mr. Aertker asserts a public law cause of action for violations of LEQA, La. R.S. § 30:2001, *et seq.*, and its citizen suit provisions in response to Defendants' ongoing violations of environmental statutory and regulatory provisions designed to protect the public's safety and constitutional right to a safe and clean environment.

111.     These violations include the release of hazardous substances from the GE-Dresser facility, Defendants' causing the contamination of the Aertker Property, and Defendants' causing the contamination of the waters of the State of Louisiana.

112.     The citizen suit provisions of LEQA are designed to allow any person or entity with an interest that "is or may be adversely affected" by violations of state environmental laws to bring an enforcement action against the responsible party or parties and otherwise seek redress.

113.     The LEQA prohibits the discharge of pollutants into the air, waters, subsurface waters, or ground as the result of a prior act or omission. La. R.S. § 2004(10). The LEQA prohibits discharging and/or allowing the discharge of any waste or any other substance that will tend to cause water pollution in violation of any rule, order, or regulation. La. R.S.

§ 30:2076(A)(1)(a). The LEQA likewise prohibits the discharge of hazardous wastes into the underground waters of the state. La. R.S. § 30:2076(F).

114.     Defendants are all currently in violation of the LEQA as a result of their acts and omissions at and near the Aertker Property that have resulted in the ongoing unlawful discharge of contaminants into the soil, surface waters, groundwater, and subsurface waters of the State of Louisiana, causing and tending to cause water pollution.

115.     More specifically, the Aertker Property is laden with contaminants that include, but are not limited to, solid and hazardous waste, radioactive materials and radionucleides, volatile organics, semi-volatile organics, and metals, including known and likely human carcinogens.

116.     Defendants' operations and works on and near the Aertker Property created and contributed to a commingled plume of contamination that continues to discharge, spill, drain, leak, seep, emit, and otherwise escape into the soil, groundwater, and subsurface waters of the State of Louisiana in violation of the LEQA.

117.     Defendants have also failed to take the necessary steps to stop the ongoing discharge of contaminants on and near the Aertker Property. This omission constitutes an ongoing violation of the LEQA as the contamination continues every day to discharge further into the soil, groundwater, and subsurface waters of the State of Louisiana.

118.     Plaintiff has an interest in protecting his own property and the source of his own groundwater from the contamination that continues to discharge without abatement on and near the Aertker Property. The interest "is or may be adversely affected" by Defendants' ongoing LEQA violations.

119.     By failing to comply with the requirements of the LEQA, Defendants have injured, threatened to injure, and will continue to injure or threaten to injure human health, the environment, and the health-related, aesthetic, and economic interests of the Plaintiff.

120.     The injuries, risks, and damages are directly traceable to Defendants' LEQA violations, and by addressing the violations, including complete removal of the contaminants, Plaintiff's injuries will also be addressed.

121.     Unless abated by an order of the Court, the violations complained of herein are causing and will continue to cause irreparable injury to the Plaintiff, the public, and the environment at, around, and in the vicinity of the Aertker Property.

122.     Pursuant to La. R.S. § 30:2029, Plaintiff will post a bond in the amount of $100.00, immediately upon order of this Court.

## REMEDIES AND DAMAGES

123.     Mr. Aertker incorporates all of the above allegations and causes of action as if incorporated specifically into this section of this Petition.

124.     Defendants are liable to provide a full cleanup of the Aertker Property as required under the injunctive remedies under LEQA.

125.     Pursuant to the Louisiana Ground Water Act, Defendants are liable to fund the "most feasible plan" to "evaluate or remediate the contamination and protect the usable ground water consistent with the health, safety, and welfare of the people." La. R.S. § 30:2015.1.

126.     In addition to groundwater remedies, Defendants are liable to Mr. Aertker for compensatory damages for the cost to fully remediate the soil and surface water on the

Aertker Property, to restore Mr. Aertker's property to the condition it was in prior to the contamination by Defendants' operations.

127.     Defendants are liable for all costs and expenses, including expert witness fees and reasonable attorneys' fees, incurred by Mr. Aertker to remedy the contamination of his property by Defendants, pursuant to the Louisiana Ground Water Act and under any other applicable law.

128.     Dresser is liable for exemplary damages pursuant to former Civil Code article 2315.3. Between 1984 and 1996, the effective period of that article, Dresser's storage, handling, and transportation of hazardous and toxic substances, including TCE, arsenic, and other VOCs, heavy metals, and pollutants, was conducted wantonly and with reckless disregard for public safety. As alleged above, Dresser discharged these substances into unlined earthen pits, through floor drains into the soil and subsurface, and across planned and intended drainage courses toward and onto the Aertker Property; and in other ways acted carelessly and recklessly in the handling of these substances.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Mr. Aertker demands judgment against Defendants and LDEQ, providing the following relief:

(a) Compensatory damages to be determined at trial, including for the cost to remediate the Aertker Property and for any diminution of value of the Aertker Property;

(b) Injunctive relief requiring remediation of the soil, surface water, and groundwater on and underlying the Aertker Property;

(c) Injunctive relief requiring the prevention of any further migration of hazardous substances or any other pollutants from Defendants' property onto or underneath the Aertker Property;

(d) Exemplary damages;

(e) Attorneys' fees, expert costs, and all other expenses allowed under the Louisiana Ground Water Act, an/or any other applicable law;

(f) Pre-judgment and post-judgment interest to the maximum extent and at the maximum interest allowed by law; and

(g) Such other relief as the Court determines to be appropriate under law and equity.

Further, Mr. Aertker demands that these claims be tried to a jury.

Respectfully submitted,

*/s/ H.S. Bartlett III*
H.S. Bartlett III
Fishman Haygood, L.L.P.
201 St. Charles Ave., Ste. 4600
New Orleans, La. 70170
Tel. (504) 586-5252
Fax (504) 554-0866

Eberhard D. Garrison (La. #22058)
855 Baronne Street
New Orleans, La. 70113
Tel. (504) 354-2104
Fax (844) 424-3864

**Counsel for Sam R. Aertker**

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2022, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system, which will send a notice of the electronic filing to the counsel of record for Defendant.

*/s/ H.S. Bartlett III*
H.S. Bartlett III